IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION


EDWARD L. REED,

    Plaintiff,

vs.                                            CASE NO. 1:03CV145-MMP/AK

JO ANNE B. BARNHART,

    Defendants.

_____/

## REPORT AND RECOMMENDATION

Plaintiff brings this cause pursuant to 42 U.S.C. §405(g) seeking judicial review of the denial of his application for retirement benefits under Title II of the Social Security Act.  (Doc. 1).

**I.    Procedural History**

Plaintiff filed for retirement benefits on February 24, 2000, and this application was denied initially and upon reconsideration.  He requested a hearing, which was held on May 9, 2002, and which resulted in an unfavorable decision on August 21, 2002. Plaintiff filed a Request for Appeals Council review, which was denied on July 11, 2003.

## II.     Decision of the Administrative Law Judge

The ALJ found that based upon the evidence Plaintiff had continued to contribute substantial and valuable services to the corporation owned by himself, his wife and son, since his purported retirement at age 62 on January 18, 2000.  The increase in his wife's salary form $0 in 1999 to $89,988 in 2000, was not commensurate with her increased duties.  The corporate salaries paid to Plaintiff and his wife are "pooled" and used to support both members of the family.  The salary arrangements of the corporation are not based upon the value of services rendered to the company.  Half of the salary paid to the wife were in fact earnings of the Plaintiff, and therefore his earnings are subject to the annual earnings test and his benefits subject to reduction based on excess earnings.

## III.    Issues

Plaintiff alleges that he is legitimately retired and entitled to benefits, and that the ALJ failed "to appreciate [Plaintiff's] entitlement to 1/3 of the family compensation profits by reason of his stock ownership," and Plaintiff has actually retired and should be entitled to benefits.

The Commissioner contends that substantial evidence supports the ALJ's decision that Plaintiff did not retire, that one half of the salary reported by his wife should be imputed to him, and that this income constituted excess earnings and resulted in the withholding of benefits.

**No. 1:03cv145-mmp/ak**

### IV.    Standard of Judicial Review

Title 42 U.S.C. § 405(g) sets forth the standard of review for this court.  The Commissioner's decision must be affirmed if it is supported by substantial evidence and the correct legal standards have been applied.  Graham v. Apfel, 129 F.3d 1420, 1422 (11th Cir. 1997).  Findings of fact by the Commissioner which are supported by substantial evidence are conclusive. 42 U.S.C. § 405(g). Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996).  "Substantial evidence" has been defined to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citation omitted) (per curiam).  It is more than a scintilla, but less than a preponderance.  Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted).  The court may not reweigh the evidence or substitute its judgment for that of the Commissioner.  Wolfe v. Chater, 86 F.3d 1072, 1076 (11th Cir. 1996).  It must determine only if substantial evidence supports the findings of the Commissioner.  See Bridges v. Bowen, 815 F.2d 622, 624 (11th Cir. 1987) (per curiam).  Even if substantial evidence exists which is contrary to the Commissioner's findings, where there is substantially supportive evidence of the Commissioner's findings, the court cannot overturn them.  Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991).  Unlike the deferential review accorded to the Commissioner's findings of fact, his conclusions of law are not presumed valid. Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted).  The Commissioner's failure to apply correct legal standards or to provide the reviewing court with an

**No. 1:03cv145-mmp/ak**

adequate basis for it to determine whether proper legal principles have been observed requires reversal. Id. (citations omitted).

## V. Evidence submitted by Plaintiff

a) <u>Minutes of Joint Special Meetings (Exhibit 2)</u>

On February 8, 2000, the minutes reflect that Plaintiff "has now ceased his active employment with AFVL and Peggy Reed has resumed her employment with the corporation after an extended leave of absence." (R. 22). The officers remained the same, which were Plaintiff as President, his son as Vice-president, and his wife Peggy as Secretary/Treasurer.

On September 7, 1999, the minutes reflect that "Ed Reed [Plaintiff] has decided to retire in Jan. 18, 2000. Peggy Reed has agreed to come back to work full time to replace him. He will keep his corp. position as president but will no longer work in the laboratory." (R. 25).

b) <u>Retirement Questionnaire (Exhibit 3)</u>

The questionnaire reflects that All Florida Veterinary Laboratory, Inc., has been incorporated since April 6, 1994, and involves diagnostic testing for veterinarians. (R. 27). The corporation has three shareholders: Plaintiff, his wife, and his son, who each hold one share or 33 1/3 of the business. (R. 27). The salary information reveals that Plaintiff earned $89,988.50 in 1999, but $0 in 2000; his wife earned $0 in 1999, but $89,988.50 in 2000; and his son earned $38,500. in 1999. The Board determines salary and there will be no change in the corporate officers as a result of Plaintiff's retirement. All three officers can sign checks. Plaintiff will be consulted on all major

**No. 1:03cv145-mmp/ak**

decisions in the business operation, and decisions are reached by "majority rules." Plaintiff claims that he previously worked about 20 hours, but will no longer be devoting any time to the business. (R. 29). Plaintiff claims that he receives no dividends or bonuses from the business and will live off his social security checks. (R. 31).

    c)    <u>Tax Returns (Exhibit 4)</u>

Tax returns for 1998 show that Plaintiff earned $80,548 in salary; W-2 forms for 1999 show that he made $89,988.50. (R. 34-37).

    d)    <u>Statement of Peggy Reed (Exhibit 5)</u>

Peggy Reed states that she left AFVL in 1994, but agreed to work when Plaintiff retired. She is a microbiologist and "fully qualified to replace him." (R. 47).

    e)    <u>Statement of Nick Reed (Exhibit 5)</u>

Nick Reed states that he has worked full time since 1994 and does all phases of lab work. (R. 48).

    f)    <u>SSA Special Determination Form 553 (Exhiibit 6)</u>

The Administration found that based on the facts set forth in the Corporate Questionnaire, "It is evident from the record that the claimant has attempted to rearrange his business affairs in an manner to achieve a maximum return from the corporation as well as to receive fully monthly retirement benefits. Although a person may properly arrange his business, personal and professional affairs to receive full benefits under the act and is not required to retire completely, the intent of the act is that the beneficiary be retired within the meaning of the law to be eligible for the full monthly cash benefits." (R. 49). Plaintiff was determined not to be retired. (R. 50).

**No. 1:03cv145-mmp/ak**

  g)  <u>Reconsideration Determination (Exhibit 9)</u>

The Administration held: "Where an individual is rendering services to a family corporation and these services are substantial and basically important to the success of the business and there is not much change in services for which much larger remuneration was paid before the alleged change, and it is clear that the beneficiary is actively involved in the operation of the business and could have effected payment of the current value of services rendered by him, it would be unreasonable to find that such an individual had retired within the meaning of the Social Security Act."  (R. 57).

  h)  <u>Affidavit of Nick Reed (Exhibit 12)</u>

Nick Reed attests that Plaintiff has had no role in running AFVL since he retired in January 2000, and that since his father's retirement he [Nick] has assisted his mother in "making all business decisions, taking samples from customers, analyzing samples, performing milk and animal testing, and assisting with explanations of the samples to customers." (R. 65).

  i)  <u>Affidavit of T.R. Baxter (Exhibit 12)</u>

Dr. Baxter is a veterinarian and a customer of AFVL, who attests that since Plaintiff retired all his business dealings have been with either Nick or Peggy Reed, and to the best of his knowledge Plaintiff no longer had any role in running AFVL.  (R. 67).

  j)  <u>Affidavit of Arthur Riley (Exhibit 12)</u>

Dr. Riley is a veterinarian and a customer of AFVL, who attests that since Plaintiff retired all his business dealings have been with either Nick or Peggy Reed, and to the best of his knowledge Plaintiff no longer had any role in running AFVL.  (R. 69).

**No. 1:03cv145-mmp/ak**

    k)    <u>Income information for Peggy Reed (Exhibit 16 and 17)</u>

According to her W-2 for 2000, Peggy Reed earned $88,029.50.  (R. 71).  A statement from A+ Bookkeeping Center, Inc., states that prior to 2000, Peggy Reed did not receive a salary from AFVL.  (R. 72).

    m)    <u>Minutes from Corporate Meetings from 1999 to 2002 (Exhibit 18)</u>

These minutes were submitted to the ALJ prior to the hearing   (R. 74 to 152).  Although the minutes reflect that Plaintiff attended the meetings, none of the entries show job assignments to him or bonuses paid to him.

## VI. Hearing Transcript

The hearing was held on May 9, 2002.  (R. 153).  Plaintiff was represented by Attorney Pamela Collins.  Plaintiff is president of a corporation called Florida Veterinary Labs Incorporated, which he described as a business that does bacteriology on samples that comes from dairies or veterinarians.  (R. 157).  The samples are received from couriers, USPS, or overnight carriers.  The samples are read for bacteria content identification and the results faxed within three days to the customers.  The three officers, himself, his son and his wife, hold annual corporate meetings, usually at the offices of their attorney, Harvey Baxter.  (R. 159).  Peggy usually decides when the meeting will be held and she presides over the meetings, insofar as she takes everything down, but decisions are made unanimously.  (R. 160).  There are four employees, Peggy, Nick, and two other girls.  (R. 161).  Major business decisions are made by Peggy and Nick, since 1987 Plaintiff has not participated in any major decisions.  Plaintiff has authority to write checks, but has not done so in several years.

**No. 1:03cv145-mmp/ak**

(R. 162). Plaintiff does not consider himself the expert in the business, his wife is the bacteriologist, he is a carpenter and has helped with construction of the business. (R. 162). Plaintiff received a salary before 2000 and could not recall if his wife received a salary at that time also. (R. 163). Plaintiff spends his day in the back of the lab where he restores antiques. (R. 163). Plaintiff states that neither Peggy nor Nick would ask him any questions about the business, even if a complicated matter arose, and he was there in the back. (R. 164). Plaintiff stated that his wife Peggy was "very active" on a full-time basis in the business before 2000. (R. 165). Plaintiff's job responsibilities before 2000 were "minimal," in that he received samples, did "identification and partial set-up," and received a salary of "approximately 60000 annually," although he could not remember. (R. 166). He recalls that his son received about "30 some thousand," and his wife received about "60000 plus." (R. 166). The ALJ asked Plaintiff why it was that his wife had no earnings prior to 2000, and he made twice what his son made even though he claims that he was basically an assistant to his son, the primary lab worker. (R. 167-68). Plaintiff stated that it was "seniority," and his wife was entitled to the difference because she had the degrees. (R. 168). Plaintiff states that his wife is basically doing the same thing she did before 2000, although she reported no income prior to 2000. (R. 170). Plaintiff explains that she was not being paid even though she was working because it was a "family thing," in that he was being paid prior to 2000. (R. 171). The business and home are on the same property. (R. 171). Plaintiff testified that the idea for the business came from his wife who was working at the UF vet center. (R. 173). He was in between jobs at the time and learned the business from her. (R.

**No. 1:03cv145-mmp/ak**

173).  Prior to Plaintiff's retirement, his wife was at the lab working every day.  (R. 175).  She received no salary because what he made "went into one pot and we didn't have separate accounts.  We just lived on what we needed and agreed to buy something out of that money."  (R. 176).

**V.     Analysis**

The requirements for receiving Social Security retirement benefits are: (1) being fully insured, as defined by the Act; (2) having attained age 62; and (3) filing an application.  42 U.S.C. § 402(a).  If an applicant is still receiving employment income, this income may be deducted from the benefits, and the amount of the deduction is determined by the annual earnings test.  42 U.S.C. §403(b)(1); 20 CFR §404.415(a).  There is a presumption of excess earnings, which Plaintiff must rebut by "convincing evidence."  42 U.S.C. §403(f)(4)(B); 20 CFR §§404.703, 404.704.

The Eleventh Circuit has also established a three-part test for "analyzing and penetrating the superficialities of unrepresentative family salary arrangements:"

>  (1) whether the claimant continues to contribute substantial and valuable services to the corporation;
>  (2) whether the family member receiving the income increases his or her duties commensurate with the increase in salary;
>  (3) whether the family member's income is used to support the claimant.

Martin v. Sullivan, 894 F.2d 1520, 1532 (11th Cir. 1990).

Applying this test to the facts at hand, the ALJ found that Plaintiff continues to contribute substantial and valuable services to the corporation in that the structure of the corporation was basically the same as it was before, that Plaintiff continued to

**No. 1:03cv145-mmp/ak**

participate in monthly corporate meetings, that Plaintiff was consulted before all major decisions, and he was able to sign checks. (R. 15).

Applying the second factor of the test, the ALJ found that although Peggy worked for the corporation for many years prior to 2000, she was not paid for it, and Plaintiff testified that they pooled the salary Plaintiff had made. The ALJ found that they were in a unique position of controlling the duties and salaries they earned because together they owned 2/3 of the corporation. Thus, the income received was not commensurate with the services rendered.

As to the third factor, the ALJ found that according to their tax returns, and Plaintiff's testimony, it is clear that Peggy Reed's salary is used to support Plaintiff and half of this salary should be attributed to Plaintiff as income. Thus, these earnings are subject to the annual earnings test, and Plaintiff's benefits should be reduced accordingly.

Based on the evidence noted above, the ALJ clearly had substantial evidence for her decision. The Court would add that there were inconsistencies in the evidence and Plaintiff's testimony at the hearing that would further support the ALJ's findings that "the claimant's family salary arrangements were not based upon the value of services rendered to the company, but were instead based solely upon a desire to avoid the annual earnings test in order to inflate Social Security benefits to the claimant." (R. 15). For example, Peggy Reed stated that she left the corporation in 1994 (R.47), and returned "after an extended leave of absence" to replace Plaintiff (R. 22), but Plaintiff testified that his wife worked full time prior to 2000 and that her job duties were basically

**No. 1:03cv145-mmp/ak**

the same.  (R. 165).  Plaintiff also testified that even before he retired his job requirements were "minimal," (R. 166), again supporting the finding that salaries fixed by the corporation were not commensurate with the duties performed.  Further, in his brief Plaintiff argues that the ALJ should not have attributed his income from the corporation to his labor, rather the income came from his stock ownership, but earlier Plaintiff stated that he received no dividend income from the corporation.  (R. 31).  These inconsistencies and the weight of the other evidence presented by the Plaintiff support the ALJ's finding.

In light of the foregoing, it is respectfully **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED.**

**IN CHAMBERS** at Gainesville, Florida, this 25th Day of April, 2005.


S/ A Kornblum
**ALLAN KORNBLUM**
**UNITED STATES MAGISTRATE JUDGE**


### NOTICE TO THE PARTIES

A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.

**No. 1:03cv145-mmp/ak**